# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAYTHAN E., a minor; and KYNDRA BYRD, as parent and next friend of JAYTHAN E., | ) ) ) | |
| Plaintiffs, | ) ) | No. 16 C 5700 |
| v. | ) ) ) | Judge Sara L. Ellis |
| BOARD OF EDUCATION OF SYKUTA ELEMENTARY SCHOOL, COUNTRY CLUB HILLS SCHOOL DISTRICT 160; MARTHA KAREN JONES, individually and in her official capacity as principal of Sykuta Elementary School; and MARLENE HROBOWSKI, individually and in her official capacity as librarian at Sykuta Elementary School, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Having been bullied by students at school, Plaintiff Jaythan E. ("Jaythan") objected to sitting at a table in the library with students who had previously harassed him. In response, Defendant Marlene Hrobowski, a librarian at Sykuta Elementary School ("Sykuta"), physically assaulted him in front of his classmates and injured Jaythan's wrist and arm. As a result of that incident, Jaythan and his mother, Plaintiff Kyndra Byrd, bring this civil rights suit pursuant to 42 U.S.C. § 1983 against Defendants Board of Education of Sykuta Elementary School, Country Club Hills School District 160 (the "District")[1], Martha Karen Jones, the principal of Sykuta, and Hrobowski, alleging that Jones and Hrobowski violated Jaythan's right to be free from unreasonable seizures under the Fourth Amendment, and that the District perpetuated a policy of corporal punishment. Defendants move to dismiss Jaythan and Byrd's complaint pursuant to

---

[1] The District represents that the proper Defendant is Country Club Hills School District 160, not the Board of Education of Sykuta Elementary School. See Doc. 15 at 1.

Federal Rule of Civil Procedure 12(b)(6). Because determining the reasonableness of Jones and Hrobowski's actions under the Fourth Amendment requires a factual analysis not appropriate for a motion to dismiss, Jaythan and Byrd may proceed to discovery on their claim against Jones and Hrobowski in their individual capacities. But because their claim against Jones and Hrobowski in their official capacities is redundant of that against the District, the Court dismisses that claim. Jaythan and Byrd have not sufficiently alleged a claim against the District—failing to provide facts to allow the Court to infer the existence of a policy or a constitutional injury caused by an individual with final policymaking authority—and so the Court dismisses the District from the case as well.

## BACKGROUND[2]

Jaythan, an eight-year old forty-five pound child, attended Sykuta for the 2015–2016 schoolyear. Several of Jaythan's classmates bullied and teased him, prompting Assistant Superintendent Tawanda Lawrence and Assistant Principal Stacy Oates to speak with Byrd, Jaythan's mother, in January 2016 about the bullying. Together, they decided that Jaythan should stay away from those bullying him but the District did not take any other action to stop the bullying. The bullying continued, with Jaythan reporting to a school nurse in February that someone hit him in the face.

On April 5, 2016, Hrobowski, the school librarian, told Jaythan to sit at a table in the library with several students who had bullied him in the past. Jaythan indicated to Hrobowski he did not want to sit at that particular table based on his past experiences with these classmates. Hrobowski insisted that Jaythan sit there, however. Jaythan then told her he wanted to go to the

---

[2] The facts in the background section are taken from Jaythan and Byrd's complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

office and call his mother, at which point Hrobowski replied, "I don't care if you want to call your mom. I'm grown." Doc. 1 ¶ 17. Jaythan turned to leave, but Hrobowski "jumped in front of Jaythan and started to physically bump Jaythan with her stomach while saying 'Squad up,' in a highly threatening, intimidating and offensive manner."[3] *Id.* ¶ 18. This knocked Jaythan backwards. Hrobowski then grabbed Jaythan by his left wrist, spun him around, dragged him to a table, and "slammed" him into a chair while stating "[d]on't nobody disrespect me." *Id.* ¶¶ 19, 21. Finally, Hrobowski asked the students "[w]ho doesn't want to be Jaythan's friend," with several students raising their hands in response. *Id.* ¶ 22. Jaythan, crying, ran out of the library toward the principal's office. A teacher stopped him and took him to his homeroom. Jones, the principal, came to Jaythan's homeroom and took him to her office but did not let him see the nurse or call his mother. Although she initially ordered him to go back to the library, Jones eventually allowed him to return to his homeroom. There, the teacher allowed him to see the nurse, who gave him an ice pack for his bruised and swollen wrist and allowed him to call his mother. Jaythan told Byrd what happened, and Byrd indicated she was on her way to Sykuta. Byrd then asked her fiancé to call the police and have them meet her at the school.

Before Byrd arrived at Sykuta, Jones asked Jaythan if he called his mother. Scared, Jaythan denied doing so, but Jones reprimanded him anyway. When Byrd arrived, she spoke with Jones, who admitted that Hrobowski put her hands on Jaythan but claimed doing so "wasn't illegal." *Id.* ¶ 33. Byrd requested that Jones get Jaythan immediately, but Jones took offense to the way Byrd addressed her, stating "You're not going to talk to me like that. I'm going to make it so you can never come back to this school." *Id.* ¶ 35. Jones then instructed a secretary to call

---

[3] Jaythan and Byrd represent that, according to Urban Dictionary, "squad up" means "someone calling someone else out to fight." Doc. 19 at 10 n.1.

3

the police. Ultimately, police questioned Hrobowski, Jones, and Byrd. An officer told Byrd that Hrobowski admitted grabbing Jaythan. No charges were brought, however.

Byrd took Jaythan to the emergency room, where hospital staff x-rayed his arm, provided him with an ice pack for his wrist and pain medication, and fitted him with a sling. Doctors determined that Jaythan had a bruised, swollen, and sprained wrist and an acute arm strain. The next day, Byrd took Jaythan to his pediatrician, who also found internal and external bruising.

When Jaythan returned to school, Byrd instructed Jones and the District's Director of Human Resources, Pamela Kibbons, that no school personnel should question Jaythan without Byrd or her attorney being present. Although given assurances to this effect, on April 19, 2016, Byrd received a call from Jennifer Volpe, the District's Director of Student Services, informing her that students had bullied Jaythan again and that school personnel had asked him to explain what happened. Volpe indicated that they had taken six pages of notes concerning the incident. Byrd protested the questioning occurring outside her or her attorney's presence and demanded a copy of the notes. Kibbons refused to provide a copy. Byrd then withdrew Jaythan and his twin brother from Sykuta that day, leaving them with no other public elementary school in the District to attend. Jaythan enrolled in St. Damian, a private school in Oak Forest, Illinois.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive

a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I.   **Claims against Jones and Hrobowski**

   A.   **Official Capacity Claim**

Jones and Hrobowski seek dismissal of the official capacity claim brought against them, arguing that this claim is duplicative of that brought against the District. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006) ("When a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself."). Jaythan and Byrd do not address this argument in their opposition, effectively conceding the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Therefore, the Court dismisses the official capacity claim against Jones and Hrobowski with prejudice. *See Mixon v. Manno*, No. 12 CV 0562, 2013 WL 1278481, at *3 (N.D. Ill. Mar. 28, 2013) (dismissing claim against school official in his official capacity where claim was also brought against board of education); *Day v. River Forest Sch. Dist.*, No. 10 CV 4426, 2011 WL 1004611, at *3 (N.D. Ill. Mar. 17, 2011) ("[T]he § 1983 official capacity claims against the individuals are duplicative of the § 1983 claim against the school district itself and, therefore, are subject to dismissal with prejudice.").

5

B.     Individual Capacity Claim

Jones and Hrobowski argue that the Court should dismiss the claim against them in their individual capacities because they did not act unreasonably under the circumstances and so could not have violated Jaythan's Fourth Amendment rights in the school setting.[4] Although the Fourth Amendment typically applies in the law enforcement context, it also extends to searches and seizures of students at public schools. *See New Jersey v. T.L.O.*, 469 U.S. 325, 341–42, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985); *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1012 (7th Cir. 1995). "[I]n the context of a public school, a teacher or administrator who seizes a student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent." *Wallace*, 68 F.3d at 1014. Under this test, a teacher may take "reasonable action" to "maintain order and discipline," which "may certainly include the seizure of a student in the face of provocative or disruptive behavior." *Id.* The test is an objective one. *Id.* at 1014–15.

Here, Jones and Hrobowski argue that Jaythan's refusal to follow instructions was provocative and disruptive, so that their "actions were not disproportionate to the interference with the educational process." Doc. 22 at 3. Although the situation could be analogized to that in *Wallace*, where the Court concluded that no reasonable jury could find the teacher's actions unreasonable, *Wallace* was decided at the summary judgment stage and involved a teacher grabbing a teenage student who was fighting with another student and disobeyed several of the teacher's orders to de-escalate the situation. *Wallace*, 68 F.3d at 1011, 1014. This case, on the

---

[4] In their opening memorandum, Jones and Hrobowski also argue that Jaythan and Byrd do not adequately allege any facts to establish conduct that shocks the conscience. In their response, Jaythan and Byrd disavow any claim for a substantive due process violation under the Fourteenth Amendment. Doc. 19 at 7. Instead, they base their claim in the Fourth Amendment's guarantee to be free from unreasonable seizures. Therefore, the Court only analyzes whether Jaythan and Byrd have properly stated a claim under the Fourth, rather than the Fourteenth, Amendment.

other hand, is only at the pleading stage and involves an eight-year old who, under the facts alleged in the complaint, did not engage in any provocative or disruptive conduct to warrant Hrobowski's or Jones' actions toward him, instead merely attempting to follow school administrators' directions to avoid those bullying him and encountering resistance from Hrobowski and Jones. Because reasonableness "requires a close scrutiny of the factual circumstances under which the seizure allegedly took place," the Court cannot conclusively determine the reasonableness of Hrobowski's and Jones' actions at this stage. *Hilton by Hilton v. Lincoln-Way High Sch.*, No. 97 C 3872, 1998 WL 26174, at *6 (N.D. Ill. Jan. 14, 1998) ("[M]any cases from this circuit addressing searches and seizures in the school context were decided following a motion for summary judgment, and with good reason, because a factual record was necessary to determine whether the alleged conduct was reasonable."); *cf. Wilson v. Cahokia Sch. Dist. #187*, No. 06-cv-0369-MJR, 2007 WL 1752150, at *2–3 (S.D. Ill. June 18, 2007) (finding issues of fact at summary judgment stage as to whether defendant's response to student was reasonable, noting that summary judgment was inappropriate time to resolve a "he said, she said kind of dispute"). Jaythan and Byrd may proceed to discovery on their Fourth Amendment claims against Hrobowski and Jones in their individual capacities, with Hrobowski and Jones able to raise their arguments as to reasonableness on a motion for summary judgment if appropriate.

## II.   *Monell* Claim against the District

The District seeks dismissal of the Fourth Amendment claim against it, arguing that Jaythan and Byrd have not adequately alleged a *Monell* policy or practice claim. Liability against the District may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law

7

or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted). Here, Jaythan and Byrd seek to proceed under the second and third methods.

Jaythan and Byrd allege that the District has a custom or practice of using unreasonable corporal punishment to discipline students. To adequately allege a *Monell* policy or practice claim, they must "plead[ ] factual content that allows the Court to draw the reasonable inference that the [District] maintained a policy, custom, or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (alteration in original) (citation omitted) (internal quotation marks omitted). Here, Jaythan and Byrd have not done so, pleading the existence of such a policy only in conclusory fashion. In relying on a single event involving only Jaythan, they fail to "demonstrate that there is a policy at issue rather than a random event." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Indeed, a plaintiff pursuing a widespread policy or practice claim generally must allege more than one or even three instances of misconduct. *Id.* (declining to adopt a "bright-line rule[ ]" but indicating that there must be "more than one instance, or even three" of wrongdoing (citation omitted) (internal quotation marks omitted)). Although it is "not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience," doing so is "necessarily more difficult" because "what is needed is evidence that there is a true municipal policy at issue, not a random event." *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (citations omitted) (internal quotation marks

8

omitted); *Davis v. Metro. Pier & Exposition Auth.*, No. 11 C 9018, 2012 WL 2576356, at *12 (N.D. Ill. July 3, 2012) (finding plaintiff had not adequately alleged a widespread custom or policy where "[a]ll of the allegations in the Complaint pertain exclusively to [the plaintiff]"); *Lewis v. County of Cook*, No. 10 C 1313, 2011 WL 839753, at *14 (N.D. Ill. Feb. 24, 2011) (dismissing *Monell* claim where the plaintiff "does not allege facts supporting retaliatory conduct against anyone other than herself"). Because all that Jaythan and Byrd alleged in connection with the District's alleged policy arises from the April 5, 2016 events, the Court cannot infer that the District maintains a custom or policy of corporal punishment, with the April 5, 2016 incident instead appearing to be more of a "random event." *See Liska v. Dart*, 60 F. Supp. 3d 889, 905 (N.D. Ill. 2014) ("[Plaintiff's] conclusory allegation of the existence of a widespread custom is insufficient to support a *Monell* claim."); *White v. City of Chicago*, No. 11 C 7802, 2014 WL 958714, at *3 (N.D. Ill. Mar. 12, 2014) (dismissing *Monell* claim where "Plaintiff merely alleged that the City engaged in a 'widespread practice' without providing any factual basis for that allegation").

But Jaythan and Byrd also allege that Jones, as Sykuta's principal, had final policymaking authority and caused Jaythan's injury. The District responds that Jones cannot be a final policymaker because only a school board has final policymaking authority under Illinois law. Indeed, numerous cases and the Illinois School Code itself support this position. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) (citing the Illinois School Code, 105 Ill. Comp. Stat. 5/10-20.5, 21.4, 21.4a); *Silverman v. Bd. of Educ. of City of Chicago*, No. 08 C 2220, 2010 WL 3000187, at *10 (N.D. Ill. July 26, 2010) (finding that principal was not final policymaker for purposes of *Monell* equal protection employment claim); *Doe 20 v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957,

979 (C.D. Ill. 2010) (finding that school administrators did not have final policymaking authority even though plaintiffs alleged they had authority to institute corrective measures and despite request to add words "final policymakers" to complaint, where Illinois law provides that only the school board has final policymaking authority). Although the Illinois School Code does not grant principals final policymaking authority, final policymaking authority may be delegated or ratified by an official having policymaking authority.[5] *Kujawski v. Bd. of Comm'rs of Bartholomew County, Ind.*, 183 F.3d 734, 737 (7th Cir. 1999). But here, instead of providing any allegations to suggest that the District's school board delegated authority to Jones, Jaythan and Byrd foreclose such a possibility by alleging that Jones' final policymaking authority came directly from the Illinois School Code. *See* Doc. 1 ¶ 7 (citing 105 Ill. Comp. Stat. 5/10-21.4a and alleging that "[b]y law, Defendant's Principal Jones is the individual delegated to have responsibility for the administration of Sykuta Elementary School"). But, as discussed above, the Illinois School Code does not provide Jones with final policymaking authority. *See Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1325–26 (7th Cir. 1993) ("[N]othing in the School Code allows us to infer that a disciplinary dean has been delegated policymaking authority." (reviewing 105 Ill. Comp. Stat. 5/10-21.4a, the section of the Illinois School Code concerning duties of principals and assistant principals)); *Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, No. 03 C 8717, 2008 WL 4876850, at *2 (N.D. Ill. June 23, 2008) ("Nothing in the School Code leads to the conclusion that a principal or assistant principal is a final policymaker with respect to regulating conduct in the schools."). Moreover, the only allegations concerning Jones' power suggest that she had the authority to make decisions, not the authority to make policies. Doc. 1 ¶ 80 ("Defendant's Principal, Jones, possessed the ultimate

---

[5] Jaythan and Byrd do not appear to pursue a ratification theory; thus, the Court does not address that alternative here.

authority and decision-making power to discipline Jaythan."). Such allegations do not suffice to allege that Jones had final policymaking authority under the delegation theory because they fail to suggest that she had the ability to make policies for the District or even Sykuta. *See Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009) ("Under the delegation theory, the person or entity with final policymaking authority must delegate the power to make policy, not simply the power to make decisions."). Because the allegations of the complaint do not allow the inference that the District's school board delegated final policymaking authority to Jones, the Court cannot allow a *Monell* claim to proceed against the District on a final policymaker theory at this time. Thus, the Court dismisses Jaythan and Byrd's claim against the District.[6]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [15]. The Court dismisses Jaythan and Byrd's complaint against the District without prejudice and against Jones and Hrobowski in their official capacities with prejudice. Jones and Hrobowski are ordered to answer the remaining allegations of the complaint by November 30, 2016.

Dated: November 8, 2016

SARA L. ELLIS
United States District Judge

---

[6] Although the Court dismisses the claim against the District, mooting any request for punitive damages against it, Jaythan and Byrd could not recover punitive damages against the District regardless. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) (precluding punitive damages against a municipality under § 1983); *Robinson v. City of Harvey, Ill.*, 617 F.3d 915, 916 (7th Cir. 2010).